**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE SUBPOENA AD TESTICANDUM directed to Nonparty Richard Bertuglia, a former employee of BDO USA, P.C., and issued in connection with<br><br>*In re Maiden Holdings, Ltd. Securities Litigation*, No. 1:19-cv-05296-CPO-SAK (D.N.J.) | : | Misc No. __________ |
| | : | CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY RICHARD J. BERTUGLIA'S MOTION TO QUASH DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Non-party Richard J. Bertuglia moves under Federal Rules of Civil Procedure 26 and 45(d) to stay compliance with and quash and/or limit the deposition subpoena served by Co-Lead Plaintiffs Boilermaker-Blacksmith National Pension Trust and Taishin International Bank Co. Ltd. (collectively "Plaintiffs" or "Lead Plaintiffs") on August 18, 2026 (the "Subpoena"). Because the Subpoena requires compliance in this District, this Court has jurisdiction to issue protective relief under Rule 26(c)(1). (*See* Declaration of Fabiola Vega ("Vega Decl.") ¶ 5 & Ex. B at 1.)

## INTRODUCTION

The underlying case, which was filed in the District of New Jersey in 2019, alleges that insurance company Maiden Holdings, Ltd. ("Maiden") made material misrepresentations in certain of its annual financial statements regarding loss reserves and other items. Specifically, the Second Amended Complaint asserts claims under Sections 10(b) and 20(a) of the Securities

Exchange Act of 1934 against Maiden and three of its former officers—its CEO and two successive CFOs—alleging that they understated loss reserves for business assumed from an affiliated insurer, AmTrust Financial Services, Inc. ("AmTrust"), and omitted adverse historical loss-ratio data from Maiden's public disclosures during a class period spanning February 2014 through November 2018. (Second Am. Compl. ¶¶ 1, 8–12 (Dkt. No. 91).)

BDO USA, P.C. ("BDO") is Maiden's former auditor. But Plaintiffs did not assert any claims against BDO. Plaintiffs did not—and cannot now—bring claims asserting that BDO's audits were deficient or that BDO's audit opinions were somehow misstated because any such claim is now barred by the applicable statute of limitations and repose period. *See* 28 U.S.C. § 1658(b)(1)-(2). At bottom, BDO's audits are not at issue. BDO is not a party to the underlying case, and neither are any of the individual auditors who worked on the Maiden audits.

For whatever reason, Lead Plaintiffs have made BDO and its now-retired audit partners the prime target of their scorched-earth discovery efforts. In October 2025, Plaintiffs issued a subpoena to BDO with 42 wide-ranging requests for documents. These document requests were not limited to Maiden's accounting determinations or even BDO's communications with Maiden. They also sought to invade BDO's internal audit processes and procedures—all irrelevant to claims against *Maiden* based on *Maiden's* statements to the investing public. Even more troubling, half of Lead Plaintiffs' requests didn't relate to Maiden at all, but to a separately conducted audit of an affiliated entity called AmTrust Financial Services, Inc. ("AmTrust"). This was particularly concerning given that the same law firm representing Lead Plaintiffs in the Maiden lawsuit is concurrently representing a class of plaintiffs in a securities fraud action against BDO relating to AmTrust, in which BDO is a defendant. In that matter, Plaintiffs' counsel already deposed Mr. Bertuglia, and when counsel sought to reopen his deposition for a second day, the court denied the

request, recognizing the disruption that continued discovery was imposing on Mr. Bertuglia and other former BDO employees. *In re AmTrust Financial Services*, Case No. 1:17-CV-01545 (S.D.N.Y. 2017), Dkt. No. 304. Lead Plaintiffs later issued a subpoena under Rule 30(b)(6) for the deposition of a corporate representative of BDO.

BDO, as a non-party, shouldered an extraordinary discovery burden in response to Lead Plaintiffs' broad discovery demands. In good faith, BDO made six document productions totaling over 450,000 pages and produced a well-prepared senior partner, Jeffrey Keene, who testified for seven full hours about four discrete annual audits—including detailed testimony about audit planning, audit procedures, and numerous audit workpapers and email correspondence—and other ancillary issues relating to BDO's engagement. Even having obtained all of this discovery from Maiden's former auditor, which has zero stake in the outcome of this litigation, Plaintiffs now demand even more. They have issued deposition subpoenas to two long-retired BDO auditors, including Richard Bertuglia, who retired from BDO on June 30, 2017 and now volunteers at an animal shelter on Long Island, New York. Plaintiffs intend to examine Mr. Bertuglia on the very same subjects that BDO's corporate designee, Mr. Keene, has already addressed during his seven hours of deposition testimony.[1]

The scope of BDO's document production and 30(b)(6) deposition preparation underscore the extraordinary burden BDO has undertaken to date. BDO's document productions encompassed four discrete Maiden audits between 2013 and 2016, with audit workpapers and communications from each. Vega Decl. ¶¶ 2–3. In preparation for his 30(b)(6) testimony, Mr. Keene reviewed these materials and provided seven hours of detailed testimony about each audit. Moreover, Plaintiffs

---

[1] The other individual is Barbara Woltjer, who resides in the Grand Rapids, Michigan area. BDO is required to provide counsel to Mr. Bertuglia and Ms. Woltjer and has undertaken to do so.

spent substantial additional time questioning BDO's designee about the separate audits of AmTrust and enforcement matters relating to AmTrust—not Maiden—over BDO's objections. (Vega Decl. ¶ 4, Ex. A, Keene Tr. at 21:16–22:24, 25:8–26:7; 45:18–84:16.) Nonetheless, during meet-and-confer correspondence, Plaintiffs contended Mr. Bertuglia's testimony is necessary because Mr. Keene was unable to answer a small number of questions and deferred to the "engagement partner." The deposition transcript identifies, at most, three exhibit-specific subjects where this occurred. These narrow subjects do not justify another unbounded examination spanning four audit years and a host of collateral matters, none of which is truly material to Lead Plaintiffs' claims against Maiden.

This is not BDO's case. At a certain point, enough must be enough. We are at that point. The cumulative burden on BDO and its long-retired former employees, including and especially Mr. Bertuglia, is excessive, and there is little, if any, incremental value of yet another deposition regarding BDO's audits. The audits occurred 10 or more years ago. Mr. Bertuglia has been retired for eight of those years. Accordingly, BDO attempted to meet and confer with Lead Plaintiffs to discuss reasonable limits to the scope and duration of any deposition. Plaintiffs refused:

- During an August 18, 2026 conference call, counsel for BDO and Mr. Bertuglia asked whether Lead Plaintiffs would agree to a limited duration or scope. Lead Plaintiffs' counsel responded "Hmm, no I don't think so" and indicated that Mr. Keene's references to the engagement partner required unrestricted examination of Mr. Bertuglia. (*Id.* ¶ 6.)
- On August 25, 2026, counsel for BDO and Mr. Bertuglia stated: "My understanding is you will not agree to any limitation of scope for a Bertuglia deposition. If that position has changed, let me know." Lead Plaintiffs did not respond. (*Id.* ¶ 7.)
- On August 28, 2026, during a lengthy email exchange in which Mr. Bertuglia's attorneys asked *three more times* whether Lead Plaintiffs would agree to discuss any limitations, Lead Plaintiffs finally responded that "We do not believe that you

> can show that there is a reasonable basis to limit the scope or time for Bertuglia's deposition[.]" (*Id.* ¶ 8.)

The Subpoena should be quashed in its entirety. If this Court does permit a deposition to proceed, we respectfully submit that the deposition should be ordered limited to three hours of testimony and confined to the specific areas where Mr. Keene deferred to Mr. Bertuglia (with an allowance for reasonable follow-up questions). Such an order would preserve every area of potentially incremental testimony without forcing a long-retired witness to undergo an unnecessary, overbroad examination spanning four complex audits.

## <u>ARGUMENT</u>

Rule 45 provides that on a "timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." *See also Fearnley Sec., Inc. v. Iwatani Corp. of Am.*, No. 25 Misc. 223 (AT), 2026 WL 205638 (S.D.N.Y. Jan. 26, 2026). Also important here, Rule 26 permits this Court to limit discovery that is unreasonably cumulative or duplicative, available from a more convenient or less burdensome source, or sought after the requesting party has had ample opportunity to obtain the information. Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii). Rule 26 further provides that the court "may, for good cause, issue an order [forbidding the disclosure of discovery] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* (quoting Fed. R. Civ. P. 26(c)(1)) (alterations in original).

The determination of whether a subpoena unduly burdens a non-party "is committed to the sound discretion of the trial court" and turns on the requesting party's need, the information available from other sources, the breadth and time period of the proposed discovery, and the burden imposed, giving due weight to a non-party's expense and inconvenience. *In re Blackstone Partners, L.P.*, No. 04 Civ. 7757 (NRB), 2005 WL 1560505, at *2–3 (S.D.N.Y. July 1, 2005);

*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49, 52 (S.D.N.Y. 1996). Given the incredibly substantial discovery BDO has already provided *and* the discovery available from defendant Maiden, the unrestricted Subpoena is duplicative and cumulative, and disproportionate to Lead Plaintiffs' needs.

**A. The Subpoena is Cumulative, Burdensome, And Disproportionate to the Needs of the Action**

The Subpoena is cumulative, unnecessary, and burdensome. On top of the comprehensive discovery Lead Plaintiffs have obtained (or will obtain) from Maiden, BDO produced over 450,000 pages of documents covering four different audit engagements and its corporate designee testified about those audits and other collateral areas for the full seven hours permissible under the Federal Rules. *Concord*, 169 F.R.D. at 52. Mr. Keene's deposition transcript identifies at most three isolated, exhibit-specific subjects where Mr. Keene thought Bertuglia potentially could provide additional context:

<u>Exhibit 1019</u>. Mr. Keene testified at length about this March 2014 memorandum, including the two reserve terms Plaintiffs' counsel focused on, but was unsure what one specific phrase meant in context of the memo. Specifically, Mr. Keene testified he was "not certain what [homogenous groupings]" means in the sentence "[t]he majority of business is individually reserved with the remainder reserved in homogenous groupings." (Keene Tr. 109:22–111:20.) When Lead Plaintiffs' counsel suggested that Mr. Bertuglia might be able to explain the sentence, Mr. Keene "assume[d]" that he would be able to explain. (*Id.*) Lead Plaintiffs have that memorandum—which BDO produced—and Keene's extensive testimony about its reserve terms, leaving at most a single sentence written more than 12 years ago as a basis for deposing Mr. Bertuglia.

Exhibit 1029. This document presents an equally narrow question. Plaintiffs' questioning concerns an email from January 2016 sent by Anthony Castoro to Michael Tait, which stated, "Rich may have already spoken about this with you previously," concerning the $67 million booked gap between the booked reserves and Maiden's internal actuaries' reserves. (Keene Tr. 223:1-225:10.) In response to whether Mr. Bertuglia was aware of the gap, Mr. Keene testified that the email "appears to indicate" that Mr. Bertuglia knew of Mr. Castoro's question. (Keene Tr. 225:14–226:20, 232:14–233:7.) Mr. Keene further testified that he did not know whether that question was ultimately resolved more than two months before the final audit—although he affirmed that the engagement team obtained sufficient evidence to issue BDO's 2015 audit opinion. (*Id.*) Lead Plaintiffs could ask the parties to the email about Mr. Castoro's question without needing to burden Mr. Bertuglia. But again, the email, the relevant workpapers, and Mr. Keene's testimony are already in Plaintiffs' hands; the only residual question is whether Mr. Bertuglia was aware of the difference and how it was addressed. Mr. Bertuglia's awareness, of course, has nothing to do with Lead Plaintiffs' securities fraud claims against Maiden.

Exhibit 1031. Mr. Keene did not know when BDO received Maiden's explanation of the commercial-auto reserve acceleration, whether BDO evaluated its magnitude before its quarterly review, or whether a contemporaneous record existed. Vega Decl. ¶ 10 & Ex. E; Keene Tr. 241:3–242:2, 244:8–245:25, 247:3–17. It is not clear what, if anything, Mr. Bertuglia could add to this exchange. All of the relevant documents and communications, including workpapers, would have been produced long ago.

These handful of isolated questions do not warrant putting Mr. Bertuglia (and BDO) through another deposition about events occurring 10 or more years ago. *See In re Blackstone Partners, L.P.*, No. 04 CIV. 7757 (NRB), 2005 WL 1560505, at *2 (S.D.N.Y. July 1, 2005)

(affirming bankruptcy court's ruling granting motion to quash subpoena where additional depositions would be "cumulative and would subject Blackstone to undue burden"); *Liner Freedman Taitelman Cooley, LLP v. Lively*, No. 25-MC-289 (LJL), 2025 WL 2205973, at *4 (S.D.N.Y. Aug. 4, 2025) ("in evaluating whether discovery on a nonparty constitutes undue burden, one relevant factor is whether the requested information can be obtained from the parties themselves.") (citation omitted). No other exchange in the transcript identifies any area where the testimony of Mr. Bertuglia would be helpful or is necessary. All other references to Mr. Bertuglia related to his personal recollection of certain events or his personal role in reviewing certain documents, which, again, have no relationship to the parties' claims and defenses in the underlying case about Maiden's accounting determinations. As Mr. Keene's testimony reaffirmed, BDO performed its audits in accordance with PCAOB standards and obtained sufficient evidence to form a reasonable basis for its opinions that Maiden's financial statements were free of material misstatement. (Keene Tr. 87:3-17.) Lead Plaintiffs had seven hours to probe BDO's audits and they did.

Consequently, the Court should quash the Subpoena as served or impose the limits set forth below. *See In re Blackstone Partners*, 2005 WL 1560505, at *3; *In re Xyrem*, 2022 WL 19575428, at *4 (quashing deposition subpoenas served on retired former experts where opinions were "already in plaintiffs' hands"); *Fecteau v. City of Mount Vernon*, No. 23 CIV. 09173 (KMK)(JCM), 2025 WL 2391410, at *5 (S.D.N.Y. Aug. 15, 2025) (quashing subpoenas where requests were "not relevant to a claim or defense, or proportional to the needs of the case.") (internal quotations omitted).

### B. If the Court Does Permit a Deposition, the Examination Should be Limited to Three Hours and Three Discrete Topics

To the extent Lead Plaintiffs are permitted to depose Mr. Bertuglia, the deposition should be confined to the three exhibit-specific subjects on which Mr. Keene indicated Mr. Bertuglia might be able to provide additional context. Rules 26 and 45 authorize precisely that relief. *See* Fed. R. Civ. P. 26(b)(2)(A), 26(c)(1)(B), (D); 45(d)(3)(A)(iv).

Specifically, Mr. Bertuglia requests the following parameters:

- all examining counsel may examine Mr. Bertuglia in one session for no more than three hours on the record; and
- questioning is limited to the following three subjects:
    - <u>Exhibit 1019</u>: Bertuglia's contemporaneous understanding of the sentence stating that "[t]he majority of business is individually reserved with the remainder reserved in homogenous groupings," including his role, if any, in preparing or reviewing the memorandum;
    - <u>Exhibit 1029</u>: Bertuglia's knowledge of and communications concerning the January 2016 inquiry about the $67 million reserve difference, including whether and how that specific question was addressed; and
    - <u>Exhibit 1031</u>: Bertuglia's transmission of the August 3, 2016 communication and, as of that communication, when BDO received Maiden's explanation of commercial-auto reserve acceleration and what information BDO assessed in connection with the June 30 interim review.

## CONCLUSION

For the reasons set out above, Mr. Bertuglia respectfully requests that the Court quash the Subpoena; or, alternatively, enter an order limiting any deposition to one three-hour session confined to the three exhibit-specific subjects identified above.

Dated: September 1, 2026
New York, New York

Respectfully submitted,

**DECHERT LLP**

*/s/ Jason D. Gerstein*
Timothy Hoeffner
Jason D. Gerstein
Fabiola Vega
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel. (212) 698-3500

*Counsel for Nonparty Richard J. Bertuglia*

## CERTIFICATE OF SERVICE

I, Jason D. Gerstein, hereby certify that, on September 1, 2026, I caused to serve a true and correct copy of the foregoing upon counsel of record in the originating litigation in the District of New Jersey via E-Mail:

| | |
|---|---|
| **MARINO, TORTORELLA & BOYLE, P.C.**<br><br>Kevin H. Marino<br>John D. Tortorella<br>437 Southern Boulevard Chatham,<br>NJ 07928-1488<br>Telephone: (973) 824-9300<br>Facsimile: (973) 824-8425 k<br>marino@khmarino.com<br>jtortorella@khmarino.com<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br><br>Michael B. Carlinsky (pro hac vice)<br>Jesse Bernstein (pro hac vice)<br>Leigha Empson (pro hac vice forthcoming)<br>Jacob J. Waldman (pro hac vice)<br>295 Fifth Avenue New York, NY 10016<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br>michaelcarlinsky@quinnemanuel.com<br>jessebernstein@quinnemanuel.com<br>leighaempson@quinnemanuel.com<br>jacobwaldman@quinnemanuel.com | **THE ROSEN LAW FIRM, P.A.**<br><br>LAURENCE M. ROSEN<br>One Gateway Center, Suite 2600<br>Newark, NJ 07102<br>Telephone: 973/313-1887<br>973/833-0399 (fax)<br>lrosen@rosenlegal.com<br><br>**THE ROSEN LAW FIRM, P.A. JACOB A. GOLDBERG**<br><br>DANIEL TYRE-KARP<br>275 Madison Ave., 40th Floor<br>New York, NY 10016<br>jgoldberg@rosenlegal.com<br>dtyrekarp@rosenlegal.com<br>Telephone: 212/686-1060 2<br>12/202-3827 (fax)<br><br>**ROBBINS GELLER RUDMAN & DOWD LLP**<br><br>TOR GRONBORG<br>TRIG R. SMITH<br>PATTON L. JOHNSON<br>ASHLEY G. PYLE<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: 619/231-1058<br>619/231-7423 (fax)<br>torg@rgrdlaw.com<br>trigs@rgrdlaw.com<br>pjohnson@rgrdlaw.com<br>apyle@rgrdlaw.com |

*/s/ Jason D. Gerstein*